UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TROOPER DONNA JANE WATTS,

       Case No.: 3:15-CV-756-J-39MCR

    Plaintiff,

v.       DISPOSITIVE MOTION

CITY OF JACKSONVILLE, FLORIDA,
PAMELA ABBOUD, AND
BRIJIN PEMBERTON,

    Defendants.
_____/

**DEFENDANTS ABBOUD AND PEMBERTON'S MOTION TO DISMISS
COMPLAINT WITH ACCOMPANYING MEMORANDUM OF LAW**

    Defendants, PAMELA ABBOUD and BRIJIN PEMBERTON[1] ("Defendant Officers"), in their individual capacities, by and thorough the undersigned attorney, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, hereby move to dismiss the Plaintiff's Complaint, with prejudice, for failure to state a claim upon which relief can be granted.

**FACTUAL BASIS**

    1.    On June 23, 2015, the Plaintiff filed a six count Complaint, suing the Defendant Officers, individually, and their employer, the City of Jacksonville, Florida.  The Complaint includes federal claims under the Driver's Privacy Protection Act ("DPPA"), federal claims pursuant to 42 U.S.C. § 1983, and state law claims as well.

    2.    The Plaintiff's essential claims are the Defendant Officers invaded the Plaintiff's privacy when they accessed her private driver's license information at some point between

---

[1] Pemberton's surname is now "Laster."

October 2011 and January 2012, without any legitimate purpose in violation of federal and state law.

3. In Count I the Plaintiff alleges Defendant Officers, "obtained, disclosed, and/or used Trooper Watts' personal information" in violation of the DPPA. In Count III the Plaintiff alleges Defendant Officers, by viewing the Plaintiff's driver's license information contained on the DAVID system, invaded the Plaintiff's right to privacy "under the DPPA and under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States," thereby raising a cause of action pursuant to 42 U.S.C. § 1983. In Count IV, the Plaintiff makes a state law claim against the Defendant Officers for Invasion of Privacy, based on the same facts.

4. For the reasons articulated below, the Plaintiff's federal claims are due to be dismissed, with prejudice. The United States Congress enacted the DPPA pursuant to its powers under the Commerce Clause of the United States Constitution. Although the Congress was within its powers under the Commerce Clause to regulate the commercial aspects of driver's records, it exceeded its powers when it enacted legislation dictating how a state will exercise its police power in the sharing of driver information within the state's law enforcement community.

## ARGUMENT

### MOTION TO DISMISS STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that will "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Rule 8(a)(2), Fed. R. Civ. P.). To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556

U.S. 662 (2009). Pursuant to the traditional view, the District Court may only grant a Rule 12(b)(6) motion to dismiss where it has been demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim to relief. *Conley*, 355 U.S. at 45-46. However, the Supreme Court has since fine-tuned the standard to reflect that the dismissal standard was one of plausibility under which a complaint must contain enough facts to state a claim that raises the "right to relief above the speculative level," or it will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

> In *Iqbal*, the Court further elaborated on its opinion in *Twombly*, succinctly stating:
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. * * * Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678 (internal citations omitted). Accordingly, "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, should be rejected as "conclusory and [are] not entitled to be assumed true." *Id.* at 681 (internal citations omitted); *see also, S.D. v. St. Johns County School Dist.*, 22 Fla. L.Weekly Fed. D7, 2009 WL 2381287 *1-2 (M.D.Fla.).

Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint on a dispositive

issue of law. *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Additionally, where the facts alleged are conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts, the complaint may be subject to dismissal. *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183 (11th Cir. 2003). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's Complaint, there is a dispositive legal issue that precludes relief. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

I. **THE UNITED STATES CONGRESS' ENACTMENT OF THE DPPA, AS IT APPLIES TO NON-COMMERCIAL USES, WAS AN IMPROPER EXERCISE OF ITS POWER UNDER THE COMMERCE CLAUSE AND IS VIOLATIVE OF THE UNITED STATES CONSTITUTION.**

The Plaintiff's core claim in the Complaint is for a violation of the DPPA. Congress enacted the federal Driver Privacy Protection Act (DPPA), 18 U.S.C. § 2721 et seq., in 1994 not out of concern for the use of driver information in commerce, but in reaction to the murder of an actress in Southern California, who was killed by a stalker who allegedly found her through her driver record. *Pilcher v. UNITE,* 542 F.3d 380, 400 (3d Cir. 2008) (Sloviter, J., dissenting).

The act prohibits the release of an individual's personal information contained in "motor vehicle records," which are "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). "Personal information" means "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

The DPPA prohibits state officials from knowingly disclosing or otherwise making available to any person or entity personal information protected under the DPPA. 18 U.S.C. §§ 2771(a), 2722(a). It is also unlawful to obtain driver information for a purpose not permitted by DPPA. 18 U.S.C. § 2722(b).

The act, however, contains exceptions in which state officials may release personal information. For instance, § 2721(b) states that personal information "shall be disclosed for use in connection with matters of motor vehicle or driver safety . . ." And § 2721(b)(1) allows disclosures:

> For use by any governmental agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

18 U.S.C. § 2721(b)(1).

The Act provides that it is unlawful to falsely represent the reason for requesting personal information. 18 U.S.C. § 2722(b). For those aggrieved individuals whose personal information had been released in violation of DPPA, Congress provided them with a private right of action against the individuals responsible for the release and those who obtained the information. 18 U.S.C. § 2724(a):

> A person, who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

Any person violating DPPA can be liable for actual damages or liquidated damages up to $2,500, and punitive damages.

A.  **CONGRESS LACKS THE POWER TO DICTATE HOW A STATE MAKES DRIVERS' PERSONAL INFORMATION AVAILABLE TO ITS LAW ENFORCEMENT COMMUNITY WHEN NO INTERSTATE COMMERCE IS INVOLVED.**

Congress passed DPPA pursuant to its power under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, in order to regulate the disclosure and use of drivers' personal data as "things in commerce." The Plaintiff seeks relief under a provision of the Act that is beyond Congress's authority over interstate commerce, because here the Act regulates entirely noncommercial sharing of drivers' personal information within a state's law enforcement community. This provision exceeds Congress's enumerated powers under the Commerce Clause because the information at issue is not a thing in commerce under the facts alleged in the Complaint; and DPPA under these circumstances runs afoul of the Tenth Amendment.

1.  **DPPA WAS ENACTED BY CONGRESS PURSUANT TO ITS COMMERCE POWER.**

The Supreme Court concluded in *Reno v. Condon*, 528 U.S. 141 (2000), that the DPPA was a valid exercise of the commerce power. However, the case involved a different provision of the law — one limiting disclosure for the purpose of bulk mail advertising — than the one at issue in this case, and different facts. *Id.* at 143-145, 148.[2] Thus, *Reno* is only helpful for the

---

[2]    The Court further underscored the commercial context of the driver data as the basis for congressional authority by noting:

> The motor vehicle information which the States have historically sold is used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce to contact drivers with customized solicitations. The information also is used in the stream of interstate commerce by various public and private entities for matters related to interstate motoring. Because drivers' information is, in this context, an article of commerce, its sale or release into the interstate stream of business is sufficient to support congressional regulation.

*Id.* at 148 (emphasis added).

general proposition that Congress enacted DPPA pursuant to its commerce power. *Reno* does not control on the question presented in this case:

> is driver information in commerce when a law enforcement officer, using a channel restricted to law enforcement functions, improperly obtains driver information for a non-commercial purpose such that penalization of that access is within Congress' powers under the Commerce Clause?

Because the information in this situation is not in commerce, the answer must be no. It is beyond dispute that the Court's holding in *Reno* that the DPPA is constitutional was based on the assumption that the driver information subject to the Act is a "thing in interstate commerce" that is being "sold" for use in the private sector by private businesses. It is "in this context" that the "sale or release" of the information "into the interstate stream of business" was deemed "sufficient to support congressional regulation."

The Defendant Officers do not dispute the commerce power extends to states insofar as they sell or offer to sell driver information. Their point is the commerce power cannot supply the authority to legislate in the context presented here, where the state makes driver information available to state law enforcement agencies pursuant to its police power, even if law enforcement officers who access that information may do so for non-law enforcement and non-economic reasons. In short, the Defendant Officers cannot be held accountable under *federal law* if they improperly access driver information. That is a state matter that should, under our federal system, be addressed by state law.

> 2. **CONGRESS' COMMERCE POWER IS LIMITED AND DOES NOT EXTEND TO THINGS THAT ARE NOT IN INTERSTATE COMMERCE OR SUBSTANTIALLY RELATED TO INTERSTATE COMMERCE — THAT IS, THINGS THAT DO NOT INVOLVE ECONOMIC ACTIVITY.**

Congress' power to regulate under the Commerce Clause is restricted to matters involving economic activity. Absent economic activity, Congress has no power to legislate. In

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, – U.S. –, 132 S. Ct. 2566 (2012), (*NFIB*) the United States Supreme Court reaffirmed the principle that the Commerce Clause has significant limits which cannot be ignored. The Court held the "individual mandate" of the federal Patient Protection and Affordable Care Act of 2010, to be a valid exercise of Congress's power to tax and spend, pursuant to Article I, § 8, cl. 1, of the United States Constitution, a power not implicated in the instant action.

Notably, a majority of the Justices expressly rejected the contention that the individual mandate was constitutional under the Commerce Clause, even as augmented by the Necessary and Proper Clause, *id.* at cl. 18. *See NFIB*, 132 S. Ct. at 2585-93 (Roberts, C.J.) and 2644-50 (four-Justice dissent).[3] The Chief Justice reaffirmed the longstanding principle that the federal government is one of only limited, specifically enumerated powers and those not expressly granted to the federal government remained with the states and the people; and that, for Congress to act, it "still must show that a constitutional grant of power authorizes each of its actions." *NFIB*, 132 S. Ct. at 2577-78. Thus, Congress may act only pursuant to its powers as enumerated in the Constitution.[4]

One of Congress's enumerated powers is the authority to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art I, § 8, cl. 3. In *NFIB*, the Court, quoting its earlier opinion in *United States v. Morrison*, 529 U.S. 598 (2000), set forth the three areas to which Congress's commerce power extends:

---

[3] The Chief Justice expressly declared his opinion to be in accord with the dissent's opinion regarding the restrictions on the Commerce Clause's reach. *Id.* at 2593.

[4] *See also, e.g., Dorr v. United States*, 195 U.S. 138, 140 (1904) (it is "settled that the Constitution … is the only source of power authorizing action by any branch of the federal government."); *Ex parte Quirin*, 317 U.S. 1, 25 (1942) (Congress "possess[es] no power not derived from the Constitution."); *United States v. Butler*, 297 U.S. 1, 62-63 (1936).

> Our precedents read [the Commerce Clause] to mean that Congress may regulate "the channels of interstate commerce," "persons or things in interstate commerce," and "those activities that substantially affect interstate commerce." *Morrison*, *supra*, at 609, 120 S. Ct. 1740 (internal quotation marks omitted).

*NFIB*, 132 S. Ct. at 2578.

Although the reach of the commerce power has expanded, it continues to be subject to limits that must be observed lest Congress "everywhere extend [] the sphere of its activity and draw [] all power into its impetuous vortex." *See id. at 2589* (quoting The Federalist No. 48, at 309 (J. Madison) (C. Rossiter ed. 1961)). The four-justice dissent in *NFIB*, in that portion of their opinion discussing the Commerce Clause (which, as noted, was declared by the Chief Justice to be in accord with his opinion), agreed with the Chief Justice's view of a commerce power that was subject to definite limits. *NFIB*, 132 S. Ct. at 2646. Thus, for a regulation by Congress to pass muster under the commerce power, it must regulate either the channels of interstate commerce, things in interstate commerce, or activities that substantially affect interstate commerce. *NFIB*, 132 S. Ct. at 2578.

In *United States v. Lopez*, 514 U.S. 549 (1995), the Court dealt with the third, and arguably broadest, category for exercising Congress's commerce power: where activities have a substantial relation to interstate commerce. In *Lopez*, the issue was the constitutionality of a federal law criminalizing possession of a firearm in a school zone. Underscoring the critical importance of a substantial nexus to interstate commerce, that is *economic activity*, the Court held that Congress had exceeded its commerce power, because "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." 514 U.S. at 567.

Similarly, in *United States v. Morrison*, 529 U.S. 598 (2000), the Court struck down a provision of the Violence Against Women Act because "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." 529 U.S. at 613.  It concluded: "We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617.

In *NFIB*, the majority rejected the "substantial relation" prong of the commerce power as a basis for upholding the individual mandate.  While that category empowers Congress to legislate as to activities having a substantial effect on commerce, the failure or refusal of persons to obtain healthcare coverage is not economic activity; rather, it is the absence of economic activity, and hence is not subject to regulation under the commerce power.  *See NFIB*, 132 S. Ct. at 2587.

Where, as in *Lopez, Morrison*, and *NFIB*, Congress seeks to extend its reach to matters not involving economic activity, to matters divorced from interstate commerce, it has exceeded its constitutional powers.

**3.   DRIVER DATA OBTAINED BY STATE AND LOCAL LAW ENFORCEMENT AGENCIES AND OFFICERS ARE NOT "THINGS IN COMMERCE," AND SUCH ACCESS HAS NO EFFECT ON INTERSTATE COMMERCE.**

When Florida makes driver information available to its law enforcement community pursuant to its police power, it is not engaged in economic activity that can be subject to Congress' regulation.  Similarly, the mere fact that a law enforcement officer obtained the plaintiff's personal information for a non-law enforcement purpose, without more, does not constitute economic activity subject to federal regulation.

Consistent with the nature and limitations of the commerce power, DPPA's provisions should be construed to apply only in the context of such data being "things in commerce," and not in the context of information being shared on a restricted basis among law enforcement agencies and officers. This follows because providing driver information to law enforcement officers does not involve placing driver information into commerce, and there is no reason to suppose that it might. In that context, central to the exercise of the States' police power, the information is noncommercial in nature, and thus the second category of commerce power cannot sustain congressional legislation controlling such sharing at the state or local level.

The sharing of driver information within the law enforcement community has no effect on interstate commerce — much less, the requisite "substantial effect" required for the third category of commerce power to support congressional action.

This is the case in Florida. Florida law expressly allows access to driver and vehicle data by "any state agency, state attorney, sheriff, or chief of police[,]" but with the added restriction that "[s]uch … state agency, state attorney, or law enforcement agency *may not sell, give away, or allow the copying of such information*." Fla. Stat. § 322.20(9) (emphasis added). The open access to driver information for Florida's law enforcement agencies, coupled with the prohibition on the agencies' sale or disclosure of such information, underscores that data sharing is internal within the law enforcement agencies and *noncommercial* in nature. Thus, the disclosures complained of by the plaintiff had no connection with interstate commerce, the constitutional lynchpin of DPPA. The plaintiff's driver information was not an article in commerce or intended, or for that matter allowed by state law, to be placed in commerce. The case is limited to these narrow facts, which do not support federal regulation.

The commerce power cannot give Congress a basis for controlling how driver information obtained by a state is shared within that state's law enforcement community. Such matters are for the States to decide, in the exercise of their general police power, a power denied to the federal government under the Constitution.

II. **THE DEFENDANT OFFICERS, IN THEIR INDIVIDUAL CAPACITIES, ARE ENTITLED TO HAVE THE PLAINTIFF'S § 1983 CLAIMS AGAINST THEM DISMISSED.**

The Complaint, on its face, demonstrates the Defendant Officers are entitled to qualified immunity and it should be dismissed before discovery. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). The "entitlement" of qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511 (1985). The Supreme Court of the United States has rejected the argument that qualified immunity cannot be granted before discovery and stated, "qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635 (1987). As argued below, the Plaintiff's federal civil rights claims do not survive the qualified immunity analysis and the Complaint should therefore be dismissed with prejudice.

As articulated above, the Supreme Court concluded in *Reno*, the DPPA was a valid exercise of the commerce power, but again, *Reno* specifically dealt with a provision of the law limiting disclosure for bulk mail advertising, rather than the one at issue in this case. *Reno,* 528 U.S. at 143-145, 148. Again, the question *Reno* did not answer is whether it is within Congress' power under the Commerce Clause to penalize a state or local law enforcement officer who accesses driver information through a channel restricted to law enforcement functions without

doing anything more than observe those records. The information in this situation is not in commerce, therefore the answer must be no.

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages provided his or her conduct does not violate clearly established federal or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit, rather than a mere defense to liability" and it is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). The driving force behind the creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 (1987).

When a trial court must determine whether a defendant may benefit from qualified immunity, the Supreme Court has in the past mandated that the trial court must first determine whether the defendant's conduct violated a Constitutional right. *Saucier v. Katz*, 533 U.S. 194 (2001). Once that has been determined, only then does the analysis take the next step to determine whether the defendant violated clearly established law at the time of the alleged misconduct. *Id*. The Court, however, has reconsidered this rigid approach and concluded that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808,818 (2009). Lower courts are now permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand. *Id*.

The Plaintiff has articulated here that the Defendant officers have done nothing more than simply "accessed" the Plaintiff's driver's information. The Plaintiff has not alleged that these

defendants have sold, disseminated or used this information in any commercial fashion. The case law is clear that the purpose of the DPPA is to prohibit improper commercial traffic of a driver's records, and to create a paradigm for states to regulate the commercial use of those records. *Reno v. Condon*, 528 U.S. 141 (2000). Even though the Eleventh circuit has held the DPPA grants a statutory right to privacy, enforceable via 42 U.S.C.§ 1983, it has also held a person does not enjoy a Constitutional right to privacy in driver's records kept by a state. *Collier v. Dickinson*, 477 F.3d 1306, 1308, 1310 (11th Cir. 2007). In this context, the statutory right is a right to have one's records free from commercial disclosure absent certain exceptions. This is most certainly not the issue at hand.

The *Collier* court considered the enforceability of the DPPA, via § 1983, in the context of commercial uses of driver's information. That case, and the cases it reviewed, did not consider the paradigm of the instant case where a law enforcement official, in a non-commercial sense, simply takes a fleeting look at a driver's record. In that respect, the law in this circuit has not been clearly established that the Defendant Officers' "access[ing]" of the Plaintiff's driver's records are violative of the law. As such, the Defendant Officers should be granted qualified immunity and the § 1983 claims against them should be dismissed with prejudice.

### III. THE STATE LAW CLAIMS ARE SUBJECT TO DISMISSAL.

The modern tort of Invasion of Privacy in Florida generally encompasses three categories, which include: (1) intrusion upon the seclusion of another; (2) commercial appropriation of one's name or likeness and (3) publication of private facts. *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1102 (Fla. 2008). It seems obvious from the Complaint's allegations that the Plaintiff is alleging the Defendant Officers intruded upon her seclusion. To constitute an

actionable invasion of privacy by intrusion, an individual must invade or trespass on another's physical solitude or seclusion. *Guin v. City of Riviera Beach*, 388 So.2d 604 (Fla. 4th DCA 1980). Although the intrusion may be physical or electronic (*See Agency for Health Care Admin. v. Associated Industries of Florida, Inc.*, 678 So.2d 1239, 1252 fn.20 (Fla.1996)), there must be an expectation of privacy in the place intruded upon. *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 160-61 (Fla. 2003). The type of intrusion contemplated by this tort causes outrage or mental suffering, shame or humiliation to a person of ordinary sensibilities. *State Farm fire & Casualty Co. v. Compupay*, 654 So.2d 944, 948-49 (Fla. 3rd DCA 1995). In determining the extent of the right of privacy, the standard by which the right is measured is based upon a concept of the person of reasonable sensibility; the hypersensitive individual will not be protected. *Cape Publications, Inc. v. Bridges*, 423 So.2d 426, 427 (Fla. 5th DCA 1982).

The place of seclusion that the Plaintiff is asserting has been trespassed upon is her DMV records. However, under Florida law the Plaintiff does not have an absolute right to privacy in these records. Florida law allows law enforcement officers unfettered access to DMV records, with the only proviso being that they "may not sell, give away, or allow the copying of such information." § 322.20(9), Fla. Stat. Presumably, the Plaintiff knows this as she herself is a law enforcement officer. As a matter of Florida law, the Plaintiff has no expectation of privacy in her Driver's License records and therefore cannot state a cause of action for invasion of privacy. Thus, all state law claims must be dismissed with prejudice.

## CONCLUSION

For the reasons stated, all claims against the Defendant Officers should be dismissed, with prejudice.

Respectfully submitted,

ROBERT D. KLAUSNER
Florida Bar No. 244082
PAUL A. DARAGJATI
Florida Bar No. 713813
KLAUSNER, KAUFMAN,
JENSEN & LEVINSON, P.A.
7080 N.W. 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Fax: (954) 916-1232

By: */s/   Paul A. Daragjati*
       Paul A. Daragjati
       *Counsel for Defendant Officers*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Thursday, September 24, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

*/s/ Paul A. Daragjati*
*Counsel for Defendants*