UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

**TROOPER DONNA JANE WATTS,**

    **Plaintiff,**

vs.                                                                  Case No. 3:15-cv-00756-BJD-MCR

**CITY OF JACKSONVILLE, FLORIDA,**
**PAMELA ABBOUD, AND**
**BRIJIN PEMBERTON,**

    **Defendants.**

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF JACKSONVILLE'S MOTION TO DISMISS**

Comes now Plaintiff, Trooper Donna Jane Watts, by and through undersigned Counsel, and responds to Defendant City of Jacksonville's Motion to Dismiss:

**I.  THE DPPA IS CONSTITUTIONAL AS APPLIED TO THE CITY.**

Contrary to the City's argument, The DPPA is constitutional as applied to the City because the information about Trooper Watts that was obtained in violation of the Drivers Privacy Protection Act (DPPA) relates to interstate commerce. As the U.S. Supreme Court stated:

> The motor vehicle information which the States have historically sold is used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce to contact drivers with customized solicitations. The information is also used in the stream of interstate commerce by various public and private entities for matters related to interstate motoring. Because drivers' information is, in this context, an article of commerce, its sale or release into the interstate stream of business is sufficient to support congressional regulation. We therefore need not address the Government's alternative argument that the States' individual, intrastate activities in gathering, maintaining, and distributing drivers' personal information has a sufficiently substantial impact on interstate commerce to create a constitutional base for federal legislation.

*Reno v. Condon*, 528 U.S. 141, 148-49 (2000). Here, Trooper Watts, as a Trooper with the Florida Highway Patrol, is involved with the regulation of interstate commerce on a daily basis while patrolling and enforcing laws on the State of Florida's major highways. In fact, the incident to which some law enforcement officers took umbrage occurred on a highway in Broward County with a speed limit of up to 70 MPH; necessarily, a major artery of interstate trucking, travel, and other commerce -- while Trooper Watts was engaged in regulating that interstate commerce. (Compl., § 9.) In addition, the stalking and harassment of Trooper Watts that was enabled by the unlawful access of her personal information from the Drivers and Vehicle Information Database (DAVID) further implicates interstate commerce. The Complaint alleges accessing of Trooper Watts's private information through DAVID implicates the use of computers on the internet -- and the internet is a vital mechanism of interstate commerce. (Compl., § 8, 16-18.)

Trooper Watts's information also concerns her private vehicles, residence, and telephones -- all of which can be reasonably inferred to contain vehicles, materials and services sold and conveyed through interstate commerce. *See Katzenbach V. McLung*, 379 U.S. 294 (1964) (holding that because Ollie's Barbecue restaurant utilized foodstuffs supplied through interstate commerce, the federal anti-discrimination law applied). Here, if the private information of law enforcement officers and women were to be disclosed to stalkers and others for illegitimate purposes, then it is likely that many women and law enforcement officers would not purchase or register their interstate commodities in Florida. *See Id.* at 300-01 (stating that racial discrimination in restaurant service "obviously discourages travel and obstructs interstate commerce for one can hardly travel without eating. Likewise, . . . discrimination deterred professional, as well as skilled, people from moving into areas where such practices occurred and thereby caused industry to be reluctant to establish there;" and, even if the local entity's "own contribution to the demand for a commodity may be trivial

by itself is not enough to remove it from the scope of federal regulation where its contribution, taken together with that of many others similarly situated, is far from trivial).

In addition, just because a federal law is intended to remedy social dangers or other ills, the law still is legitimate under the Commerce clause so long as it could or does substantially affect interstate commerce. "[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question. (citation omitted.)" *Heart of Atlanta Motel, Inc., v. U.S.*, 379 U.S. 241, 256 (1964) (applying a federal law to a local motel, even though the law is intended to curtail racial discrimination, where the law is effectively linked to interstate commerce). Here, a major purpose of the DPPA is to prevent stalking and harassment -- specifically stalkers of women and law enforcement officers -- by denying stalkers and other harassers access to personal information:

> [I]t is clear that safety and security concerns associated with excessive disclosures of personal information held by the State in motor vehicle records were the primary issue to be remedied by the legislation. See, e.g., 140 Cong. Rec. H2526 (daily ed. Apr. 20, 1994) (statement of Rep. Porter Goss) ("The intent of this legislation is simple—to protect the personal privacy and safety of all American licensed drivers."). In hearings held in the House Subcommittee on Civil and Constitutional Rights, numerous witnesses testified regarding the grave consequences of open access to government records of personal information. Not surprisingly, many witnesses mentioned the murder of an actress, Rebecca Schaeffer, by a stalker who had obtained her unlisted home address through the California DMV, a crime that was viewed as a catalyst for both state law privacy protections and the DPPA itself. Other witnesses testified about the impact of the availability of DMV records on the safety of domestic violence victims and law enforcement officers and their families targeted for retribution. . . . The bill, it seems, was viewed predominantly as a public safety measure.

*Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 607 (7th Cir. 2012) (en banc) (footnotes omitted). *See Katzenbach*, 379 U.S. at 303-04 (holding that where legislators, in light of the facts and testimony before them, have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce, our investigation is at an end). In the analogous areas of sexual and racial

harassment and other forms of discrimination, Congress long has established constitutional bases under the Commerce Clause and otherwise to pass laws outlawing sexual and racial harassment by municipalities and localized businesses. See, e.g., Title VII, 42 U.S.C. 2000E, et seq.; *Heart of Atlanta Motel, Inc.*, 379 U.S. 241; *Katzenbach*, 379 U.S. 294.

Additionally, the DPPA is constitutional as applied under the Necessary and Proper clause, under the Fourteenth Amendments Due Process and Equal Protection clauses, and under the Constitution's right to privacy. For instance, it is necessary and proper to prevent municipalities from violating those rights of Trooper Watts and other citizens by illegitimately obtaining, disclosing, or using the citizens' private information because failure to prevent the municipalities from doing so likely would render the DPPA ineffective. See also National Aeronautics and Space Administration v. Nelson, 131 S. Ct. 746 (2011) (stating that ""a "statutory or regulatory duty to avoid unwarranted disclosures" generally allays privacy concerns created by government "accumulation" of "personal information" for public purposes") Judge Antoon's ruling in *Ela v. Orange County Sheriff's Office*, Case No. 6:13-cv-491-Orl-28KRS (M.D. Fla. January 29, 2014), on the constitutionality of the DPPA is based in part on these considerations. *Id.* at *8-*11.

The City's reliance on *United States v. Lopez*, 514 U.S., 549 (1995), is unavailing because the scope of that federal law at issue was limited to gun possession near local school zones, and that such a limited scope obliterated the economic nexus to interstate commerce. *See Id.* at 556-57 (quotation omitted). Similarly, the Court in *United States v. Morrison*, 529 U.S. 598 (2000), expressly utilized the *Lopez* rationale to invalidate the Violence Against Women Act, holding: "Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity" 529 U.S. at 613; and, that Congress cannot "regulate non-economic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617. Conversely, the

DPPA is not based solely on violent crime or solely on non-economic conduct's aggregate effect on interstate commerce; instead, the DPPA regulates information that affects the sale and use of motor vehicles and other items used in interstate commerce, and the information itself which may be used in interstate commerce, and the information might be misused anywhere throughout the United States. Also, neither the Lopez nor Morrison Courts analyzed the laws at issue in those cases under the Commerce clause categories where "Congress may regulate the use of the channels of interstate commerce, or where Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." 514 U.S. at 558. As shown in Plaintiff's arguments above, the DPPA is valid under the Commerce clause under all categories.

Throughout its argument, the City arrogates aspects of sovereign immunity conferred on the states, but not to municipalities. The City's lack of sovereign immunity is addressed at length in Point Heading II below.

The City's argument regarding the DPPA's violation of the sanctity of the City's police power is without merit -- not only because of all of Plaintiff's arguments above, but because the City's abuse of its police power is subject to myriad causes of action regarding, for example, rights to privacy, to travel, to free speech, to due process, to freedom from unreasonable searches and seizures, to freedom from sexual harassment, to freedom from racial discrimination, and to freedom from retaliation under such laws as 42 U.S.C. § 1981, 42 U.S.C. § 1982, and 42 U.S.C. § 1983.

Finally, one important observation in the *Lopez* opinion that supports the application of the DPPA to the City is that the Court can "invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." 514 U.S. at 568, 577-78 (Kennedy, J., concurring). Here, the City has failed to make any showing, much less a plain showing, that the

DPPA exceeds Congress's constitutional bounds. Thus, denial of the City's Motion on the grounds of as-applied constitutionality is warranted.

## II. SOVEREIGN IMMUNITY DOES NOT BAR APPLICATION OF THE DPPA TO THE CITY.

The application of the Drivers Privacy Protection Act (DPPA), 18 U.S.C. § 2721, et seq., to the City under the facts of this case does not impermissibly abrogate sovereign immunity. The City incorrectly makes the presumption that the City is identical to the State of Florida for the purposes of the DPPA. However, the DPPA exempts states and their agencies, not local political subdivisions like municipalities, because the states are the entities that collect, store, and make available the private data at issue, and "the DPPA does not require the States in their sovereign capacity to regulate their own citizens. The DPPA regulates the States as the owners of databases." *Reno v. Condon*, 528 U.S. 141, 151 (2000). Moreover, the section of the DPPA titled "Definitions" states: ""person" means an individual, organization or entity, but does not include a State or agency thereof" 18 U.S.C. § 2725(B). The City of Jacksonville is an incorporated entity, and is not an agency of the State of Florida within the plain meaning of that term. Instead, a State of Florida agency would most logically refer to the Department of Motor Vehicles and the Florida Department of Highway Safety and Motor Vehicles. Nowhere in the DPPA appears the terms "subdivision," "municipality," or "city." The only case found by undersigned Counsel that opined on this issue stated: "The DPPA includes a private cause of action against persons—a term defined to include entities such as the Village, 18 U.S.C. § 2725(2) —who impermissibly use someone's personal information. 18 U.S.C. § 2724(a)." *Senne v. Village of Palatine, Ill.*, 645 F.3d 919, 920 (7th Cir. 2011) ; rev. en banc, on other grounds, 695 F.3d 597 (2012). The en banc opinion reinforced the applicability of the DPPA to municipalities by stating: "The permissive disclosures number fourteen in total and cover a range

of purposes and recipients including public entities...." 695 F.3d at 605. *See also Deicher v. City of Evansville, Wis.*, 545 F.3d 537 (7th Cir. 2008) (regarding case where a municipality was defendant, the city was found guilty of DPPA violations; case remanded only for new trial on damages).

Also, the State of Florida typically defines a municipality, sheriff's office, county, and school board as a political subdivision -- not as an agency of the State of Florida. The Florida Statute defining words and terms used throughout the Florida Statutes states: "The words "public body," "body politic," or "political subdivision" include counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts, and all other districts in this state." Fla. Stat. § 1.01(8).

In the context of 42 U.S.C. § 1983, the U.S. Supreme Court in *Howlett v. Rose*, 496 U.S. 356 (1990), held that political subdivisions in Florida (and elsewhere) were subject to suit in federal Court for Section 1983 claims, although the State of Florida itself and its agencies were not so subject. In describing the political subdivisions, such as the School Board that was the defendant in the case, the *Howlett* Court varied its terminology, but the state agency versus independent political subdivision distinction remained constant. For instance, the Court stated: "Fla.Stat. § 768.28 (1989).4 That statute provides that the State and its subdivisions, including municipalities and school boards, § 768.28(2), are subject to suit in circuit court for tort claims 'in the same manner and to the same extent as a private individual under like circumstances,' § 768.28(5)." 496 U.S. at 361 (footnote omitted). The Court also stated: "We concluded: "The decision to subject state subdivisions to liability for violations of federal rights . . . was a choice that Congress, not the Wisconsin Legislature, made, and it is a decision that the State has no authority to override." *Felder v. Casey*, 487 U.S. 131, 143 (1988)." 496 U.S. at 377. The *Howlett* Court still further stated:

"Federal law makes governmental defendants that are not arms of the State, such as municipalities, liable for their constitutional violations. See *St. Louis v. Praprotnik*, 485 U.S. 112, 121-122 (1988); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)." 496 U.S. at 377.

    The Court might take special note that the portion of *Howlett* cited on Page 10 of the City's Motion, stating that municipalities in Florida were state agencies, is a quotation from a Florida Supreme Court opinion that was overruled by the U.S. Supreme Court. 496 U.S. at 360-65 (quoting *Hill v. Department of Corrections*, 513 So.2d 129 (1987)). The U.S. Supreme Court in *Howlett* held that the *Hill* Court overextended sovereign immunity to counties, municipalities, and school districts -- entities that were subject to suit in federal court. 496 U.S. at 366.

    Regarding a factual basis for the City's liability under the DPPA, the Complaint alleges: "The City of Jacksonville (actually or constructively) knowingly allowed and facilitated at least four instances of obtaining, disclosing, and/or using Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA." (Compl., ¶ 16.) Furthermore, the Complaint alleges that the individual Defendants were acting within the course and scope of their duties when accessing Trooper Watts's information, and the logical inference is that they were using their City-conferred authority to access DAVID and the City's computers to do so -- Trooper Watts's information being "made available to law enforcement personnel throughout the State of Florida" by the FDLE via DAVID. (Compl., ¶ 5-6, 8, 17-18, 20.)

    Additionally, even if the City does not have strict vicarious liability under the DPPA, Paragraph 16 clearly alleges that the City knowingly violated Trooper Watts's rights under the DPPA. Thus, Plaintiff's Complaint states her claims under the DPPA against the City, and denial of the Motion is warranted on this issue.

### III. PLAINTIFF STATES ADEQUATE STATUTORY AND CONSTITutiONAL GROUNDS FOR HER SECTION 1983 CLAIM AGAINST THE CITY.

Count II of the Complaint states a claim against the City under 42 U.S.C. § 1983 for violations of the constitutional right to privacy, under the Fourth Amendment's right to be free of unreasonable searches, and under federal law; i.e., the DPPA. (Compl., ¶ 30-33.)

The City's Motion does not challenge the DPPA as a federal law that can form the basis for a Section 1983 claim, but the Eleventh Circuit has done so. *See Collier v. Dickinson*, 477 F.3d 1306, 1310-11 (11th Cir. 2007) (holding that the DPPA provides a basis for Section 1983 claims). Instead, the Motion challenges the Complaint on the constitutional grounds of unreasonable searches and invasions of privacy alleged therein.

Count II does cite to Plaintiff's Fourth Amendment right against unreasonable searches, although Paragraph 30 also alleges "as applied to the states by the Fourteenth Amendment." *Id.* The Complaint further alleges:

> 31.   Trooper Watts has the right to privacy under the DPPA and under the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution of the United States.
>
> 32.   The City of Jacksonville's actions as alleged herein violated Trooper Watts's constitutional rights of privacy and to be free of unreasonable searches.

*Id.* Insofar as the right to privacy encompasses the right to be free from unreasonable searches, the Fourteenth Amendment is adequately invoked. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 484 (1965) (holding the right to privacy is created by the penumbral inference of various other constitutional rights, including the Fourth Amendment's unreasonable search clause). The City's argument appears to be insignificant, especially under the standards of notice pleading, but if the Court were to find Count II deficient on this basis, the deficiency could be readily cured by amendment of the pleading.

The Motion next argues that the allegations of Count II do not implicate any of Plaintiff's fundamental rights, such as intimate aspects of her life, including procreation, marriage, or education. However, the data does include Trooper Watts's color photograph or image, Social Security number, date of birth, state of birth, prior and current home addresses, emergency contacts, and those contacts private and highly-restricted personal information. (Compl., ¶ 7-8, 29.) The proper inference, reinforced by the DPPA, is that those data concern many intimate aspects of a person's life. Another reasonable inference is the contact information is likely to reveal details about Trooper Watts's marital status and her spouse's, parents's, children's, and/or intimate associate's personal information. As discussed in Section I above, Congress considered that maintaining the privacy of this data may be crucial to the safety of women and law enforcement officers; and, by logical extension, to their friends and family; against stalkers and others intent on harm. Thus, the Complaint puts the City on notice of the violation of Trooper Watts's fundamental rights implicated by the City's actions as alleged in Count II; however, if the Court were to find Count II deficient on this basis, the deficiency could be readily cured by amendment of the pleading.

The unpublished and altogether non-binding facts and holdings of *Johannson v. Emmons*, 2010 WL 457335 (M.D. Fla. 2010), as related in the City's Motion, are readily distinguishable from the facts of the instant case. Here, as a matter of law under the DPPA, Trooper Watts's data was not accessed in the ordinary course of business because the access was in violation of the DPPA. Also, the argument of the City implies that Emmons had a legitimate reason to access Johannson's data; here, conversely, neither the City nor its employees had a legitimate reason to access Trooper Watts's data.

Furthermore, to the extend the "ordinary course of business" analogy to Trooper Watts's DPPA-protected data would mean that just because a doctor's staff has access to a patient's medical records means that HIPPA is toothless and that the patient has no right to privacy regarding her medical records. Or, despite Congress's recent tightening of the Patriot Act, U.S. citizens would have no expectation of privacy in their telephone records accessed by their telephone company's employees in the ordinary course of business. In actuality, Trooper Watts has and other U.S. citizens have reasonable expectations in very many records that are accessed by government and other employees in the ordinary course of business -- including certain records accessed by court, accountant, and law office staff in the ordinary course of their respective businesses.

The Motion also argues that Trooper Watts's right against unreasonable searches was not adequately alleged because nothing she controlled was improperly searched. However, analogous to a person's legal and reasonable expectation that police not improperly search her safe deposit box in a bank, she has a similar expectation -- codified by the DPPA and reinforced by modern precautions against identity theft -- that her highly personal and economically valuable information entrusted to the State of Florida not be improperly searched by the City. Thus, the Complaint alleges violations of the Constitution and federal law; i.e., the constitutional right to privacy, the Fourth Amendments right to be free of unreasonable searches, and the DPPA. Therefore, denial of the Motion is warranted on these issues; otherwise, Plaintiff requests leave to amend.

  **IV. THE COMPLAINT ADEQUATELY ALLEGES THE CITY'S CUSTOM OR POLICY AND DELIBERATE INDIFFERENCE UNDER SECTION 1983.**

Contrary to the Motion, the Complaint alleges the City's custom or policy, or the City's deliberate indifference, as the basis for the City's liability under Section 1983. The Complaint alleges:

> The City's violations of Trooper Watts's rights are due to the City's policy or custom of allowing its employees to invade the privacy of, and/or conduct unreasonable searches against, people in whom the employees have an unofficial interest, including to unlawfully obtain, disclose, and/or use personal information from DAVID.

(Compl., ¶ 34.) The next two paragraphs allege the City's deliberate indifference to the training and supervision of its employees who violated Trooper Watts's right to privacy, right to be free from unreasonable searches, and rights under the DPPA. (Compl., ¶ 35-36.) Thus, the Complaint adequately alleges underlying violations by City employees. Under the standards of notice pleading, the Complaint adequately alleges custom or policy.

The Motion next seems to argue that a higher, more stringent standard of pleading applies to Section 1983 claims of deliberate indifference. However, no such heightened pleading requirement exists, and the Complaint alleges all of the facts necessary to establish a claim for deliberate indifference. (Compl., ¶ 1-23, 29, 35-36.) As the *Twombly* Court stated:

> [O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. [Citation omitted.] (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")...

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). Here, the Motion appears to ignore the facts alleged and realleged to support the claims. Furthermore, Paragraphs 35 and 36 allege sufficient facts specific to this case to elevate those allegations above and beyond a formulaic recitation of the elements of the claim. Besides, discovery and other evidentiary procedures are when the actual evidence is needed to be adduced to prove the claim. Otherwise, the City's argument would effectively convert every Complaint into a response to a motion for summary judgment. Thus, denial of the Motion is warranted on these issues; otherwise, Plaintiff requests leave to amend.

V.   **COUNT IV ADEQUATELY ALLEGES THE CITY'S INVASION OF TROOPER WATTS'S PRIVACY.**

Count IV of the Complaint adequately alleges Trooper Watts's claim of invasion of privacy against the City. The Motion argues that "Plaintiff has not alleged any intrusion into her private quarters by the Sheriff or any of its employees." (Mot., Pg. 21.) However, the Complaint alleges that Trooper Watts's privacy was invaded electronically, and included the private information about her physical domains of home and vehicle. The Motion next argues that Trooper Watts has no reasonable expectation of privacy in her driver's license records. (Mot., Pg. 21.) Plaintiff reiterates her arguments in Section III above on this expectation issue. Additionally, Count IV alleges: "Defendants invaded Trooper Watts's privacy by accessing her private information on the DAVID system without a lawful purpose and without her knowledge or consent." (Compl., ¶ 50.) Like a home safe or desk drawer, Trooper Watts has a reasonable expectation that Defendants would not access her restricted information without a search warrant or other legal basis.

The Motion then argues that the bad faith of the City's employees immunizes the City from liability. First, it should be noted that this claim is made additionally or alternatively. (Compl., ¶ 47.) Allegations of malice and bad faith are not realleged for Count IV, and cannot be attributed to Count IV. Moreover, Count IV alleges:

> The invasions of privacy and other unlawful acts against Trooper Watts by City employees Aboud and Pemberton were committed within the course and scope of their duties as agents and employees of The City.

> The invasions of privacy and other unlawful acts against Trooper Watts by City employees Pemberton and Aboud were committed under the authority of The City and/or in (at least partial) furtherance of The City's interests.

(Compl., ¶ 52-53.) Thus, the Motion's argument regarding immunization because of the malice of employees is without merit.

Finally, the Motion argues that the DPPA does not provide for negligent oversight. That argument is irrelevant because this is a claim for the common law tort of invasion of privacy. Thus, denial of the Motion regarding this Count is appropriate.

## VI.   THE COMPLAINT ALLEGES CLAIMS OF NEGLIGENT TRAINING AND SUPERVISION AGAINST THE CITY.

Counts V and VI adequately state Trooper Watts's claims of negligent supervision and training, respectively, against the City. Addressing the City's first argument, the individual Defendants' invasion of Trooper Watts's privacy under the DPPA and under the common law tort of invasion of privacy both provide the underlying grounds for the common law negligent training and supervision claims.

Contrary to the Motion's next argument, those Counts do not allege that the City is liable because of discretionary, planning functions. That is something that the City impermissibly reads into the allegations. Taken in a light most favorable to Plaintiff, the claims concern only the operational functions and implementation of the supervision and training.

Additionally, the Counts adequately allege that the City was negligent in its supervision and training. Under the requirements of notice pleading, the Complaint need not allege the specifics of the numerous ways the City could have implemented its supervision and training to prevent the invasions of Trooper Watts's privacy. Thus, denial of the Motion is warranted on Counts V and VI; otherwise, Plaintiff requests leave to amend.

## Conclusion

Denial of the Motion is warranted in its entirety. To the extent that the Motion is granted, Plaintiff requests leave to amend.

**CERTIFICATE OF SERVICE**

I certify that on this Sixth day of October, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: STEPHEN J. POWELL, Attorney for Defendant City of Jacksonville; OFFICE OF GENERAL COUNSEL CITY OF JACKSONVILLE; 117 West Duval Street, Suite 480; Jacksonville, Florida 32202; spowell@coj.net; and, to: ROBERT D. KLAUSNER and PAUL A. DARAGJATI, Counsel for individual Defendants; KLAUSNER, KAUFMAN, JENSEN & LEVINSON, P.A., 7080 N.W. 4th Street, Plantation, Florida 33317.

Respectfully submitted by:

s/ Mark E. Tietig

Mark E. Tietig, Trial Counsel
Fla. Bar No. 105465
Tietig & Tietig, P.A.
6065 South Tropical Trail
Merritt Island, FL 32952
(321) 452-9944
Facsimile: (321) 452-6960
mt@tietig.com
Attorney for Plaintiff